A04A1639. PAGE v. THE STATE.
(610 SE2d 171)

ADAMS, Judge.
Willie Ray Page was found guilty of rape and aggravated assault (which merged with the rape count), and was sentenced to life in

prison. On appeal he contends that his trial counsel was ineffective and that the evidence was insufficient to support the verdict.

Construed in favor of the verdict the evidence shows the victim, L. J., was 31 years old and suffered from mental retardation, deafness, and seizures. She lived with Brenda W., her mother, and Page, who was engaged to Brenda at the time. Page's sister also lived there and normally looked after L. J. while her mother was working.

On the morning of April 7, 2001, Brenda fed her daughter, administered her usual medication, and left her covered with a blanket lying in bed when she left for work. Because Page's sister was away, Brenda left L. J. in Page's care. She returned less than ten minutes later because she had forgotten her glasses, and she ran to get them in the bedroom. She found the door to the bedroom closed tight, which was unusual because they had a practice of not closing it tight because it would stick to the carpet. As she pushed the door open, Page said, "wait a minute, wait a minute." When she got the door open, she saw Page naked, bent over her daughter, moving like he was trying to get up. Her daughter was not lying where Brenda left her, but was turned toward Page, on her back with her legs spread open "like she was actually getting a pelvic exam," with her panties pulled to one side exposing her vagina. Brenda screamed and started beating Page while demanding to know what was happening. Two nephews in the house ran to the bedroom in response.

Brenda took L. J. to the hospital where she was examined by Laura Harbin, a registered nurse trained as a sexual assault nurse examiner. Harbin, who was accepted as an expert in sexual assault evaluation and examination, testified that she found three nonmotile sperm in L. J.'s cervix and that L. J.'s vagina had experienced trauma and a fresh laceration in a position normally found on a sexual assault victim who was on their back during the incident. She testified that with regard to the sperm being nonmotile, "It's also possible that sometimes perpetrators do not ejaculate. Some of them ejaculate to form sperm, dead sperm, so anything is possible." Finally, construed in favor of the verdict, she testified that the laceration and reddening of the cervix was evidence of penetration and that the trauma had occurred "within the last couple of hours."

The State also presented evidence of an earlier incident in which Page was convicted of sexually molesting a child between eight and ten years of age.

1. Page contends that the evidence was insufficient because there was no evidence of penetration and no evidence that L. J. did not consent to the act. In a case of rape, "[t]he necessary penetration need be only slight and may be proved by indirect or circumstantial evidence." (Punctuation and footnote omitted.) *Lay v. State*, 264 Ga. App. 483, 484 (1) (591 SE2d 427) (2003). See also *Payne v. State*, 231

Ga. 755 (204 SE2d 128) (1974). Evidence that L. J. was left in Page's care, that Page was found naked standing over L. J. with her panties pulled aside to reveal her vagina, that an examination revealed recent sexual trauma and sperm, and that Page had committed a similar sexual offense was sufficient to establish that Page raped L. J., including that there was penetration. See *Allen v. State*, 203 Ga. App. 851, 852 (1) (418 SE2d 125) (1992).

With regard to consent, "the State had the burden of proving beyond a reasonable doubt that the victim's disability rendered her incapable of knowing and intelligent consent to the alleged sexual act, and whether or not the State had discharged this burden was for the jury to decide." *Durr v. State*, 229 Ga. App. 103, 104 (1) (493 SE2d 210) (1997). The evidence showed that the 31-year-old victim suffers from mental retardation, deafness, and seizures, and has for her entire life. She cannot stay at home by herself, cannot work, and requires total supervision. She also cannot communicate verbally, cannot read or write, and only knows about five signs. She is unable to choose her own food or clothes. Her mother testified that she functions "like a two year old or less." Officer Bowles, who took the initial report, testified that she was unable to get any information from the victim. Harbin testified that the victim never understood her questions even with the help of her mother. When L. J. was called as a witness, she was nonresponsive, and the parties agreed to stipulate that she was nonresponsive.

This evidence, together with the jury's first-hand observation of L. J., was sufficient for the jury to conclude that because of her mental condition, she was not capable of giving Page consent to sexual intercourse. See generally *Baise v. State*, 232 Ga. App. 556, 558 (1) (502 SE2d 492) (1998).

2. Page also contends that his trial counsel was ineffective by (1) failing to object to the competency of the victim as a witness, (2) failing to object to the similar transaction evidence, (3) failing to interview or call certain witnesses, and (4) failing to object to certain evidence. The standard for assessing whether trial counsel rendered constitutionally effective assistance is set out in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Under *Strickland*, a criminal defendant must show both that his counsel's performance was deficient, and but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different.

(a) Page contends that his trial counsel should have objected to the competency of the victim to testify as a witness because the hearing on the issue would have been held outside the presence of the jury and, therefore, her own nonresponsiveness would not have

contributed to the jury's conclusion that she was incapable of consenting to sex. We find that Page's own reasoning on this issue shows that there was no possible harm from failure to object. Page argues that his counsel would have prevailed on this objection because "the mother's testimony about what the victim could and could not do clearly indicated that the victim had no powers of reason nor could she communicate in any meaningful way." If the mother's testimony already established that the victim had no powers of reason, then additional evidence on the same point could not be harmful.

(b) With regard to the similar transaction, Page has not shown ineffective assistance. Page's counsel did not testify at the ineffective assistance hearing, and in the absence of evidence to the contrary, trial counsel's actions are presumed to be strategic. *Holmes v. State*, 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001). Furthermore, "[t]rial counsel's failure to pursue a futile objection does not constitute ineffective assistance. [Cit.]" *Massingill v. State*, 240 Ga. App. 690, 691 (2) (b) (524 SE2d 746) (1999). Contrary to Page's argument, our review of the record shows that the two events were sufficiently similar.

The two incidents were similar in the following ways: Page lived with the victims' mothers; the victims were left in his care; he pushed aside the victims' clothing to assault them; he was discovered when family members walked in on him during the assaults; one victim was a child and the other had the mental capacity of a child.

> [I]n crimes involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to corroborate the victim's testimony. The exception to the general rule that evidence of independent crimes is inadmissible has been most liberally extended in the area of sexual offenses.

(Citations and footnote omitted.) *Hostetler v. State*, 261 Ga. App. 237, 238 (1) (582 SE2d 197) (2003). We find that Page has failed to establish either prong of the *Strickland* test with regard to this claim.

(c) Page contends that his counsel should have interviewed and called certain witnesses that had been brought to his attention. At the hearing on the motion for new trial, three alleged additional witnesses testified, but neither Page nor his trial counsel testified. The three witnesses were one of Page's nephews, who was in the house at the time of the alleged incident; Page's niece, who spoke on the telephone to the victim's mother about the incident right after it happened; and one of Page's sisters, who also spoke on the telephone to the victim's mother right after the incident.

Arguably their testimony could have established the following points. Brenda gave inconsistent information about the particulars of her allegations against Page, including, whether she screamed immediately after she entered the bedroom or not until one or two minutes later, whether she had trouble opening the door, whether she found L. J. on her back or turned backward, whether she found Page standing over L. J. or standing near the door, and whether she left for the hospital immediately or stopped to make a 30- or 45-minute telephone call.

They also testified that Page and Brenda had problems in their relationship and that on one or more occasions, Brenda had said something like, "If I can't have him, nobody can." They also suggested that L. J. may have had slightly more mental capability than the testimony presented at trial showed. Page's sister also testified that the mother of the similar transaction victim, who testified at trial, had told her that the victim had recanted her story at some point in time. Finally, Page's sister testified that after numerous unsuccessful attempts to contact her brother's attorney, she finally reached him and told him about how there were several witnesses; but he did not take down telephone numbers, and although he said he would call back, he never contacted her or any of the other potential witnesses.

The burden is on a defendant asserting ineffectiveness of trial counsel "to show both that . . . counsel's performance was deficient and that the deficient performance prejudiced his defense." (Citations omitted.) *Brown v. State*, 257 Ga. 277, 278 (2) (357 SE2d 590) (1987). In order to show the second prong, Page must show that without the deficient representation there exists "a reasonable probability that the outcome of the [trial] would have been different." (Citations omitted.) *Brogdon v. State of Ga.*, 255 Ga. 64, 68 (3) (335 SE2d 383) (1985). Even if we were to find that failure to interview the witnesses constituted deficient representation, which we do not address, we conclude that Page cannot establish harm under the second prong of the test in *Strickland*.[1]

The direct evidence in this case that has never been contradicted is that Brenda discovered Page naked in the room with her mentally

---

[1] We note that where trial counsel does not testify at the hearing on the motion for new trial, it is " 'extremely difficult' " to overcome the presumption that trial counsel's actions were strategic. (Citation omitted.) *Wilson v. State*, 277 Ga. 195, 200 (2) (586 SE2d 669) (2003). Further, it is not the State's burden to call trial counsel as a witness. See *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002). And because Page failed to testify at the hearing and failed to call his trial counsel as a witness, we do not know whether the two may have discussed reasons to not call the nephew, niece, and sister as witnesses at trial. It may be that Page had bad relationships with these individuals, that he did not trust them, or that they had other knowledge that he did not want revealed. See generally *Harris v. State*, 257 Ga. App. 819, 824-825 (2) (c) (572 SE2d 370) (2002).

retarded daughter in a sexual position; medical evidence showed that L. J. had suffered trauma consistent with penetration within the last couple of hours; and L. J. had sperm on her cervix. In addition, Page had been convicted of child molestation in the past arising out of very similar circumstances. In light of this strong evidence, the evidence presented at the hearing by the three witnesses is insufficient to create a reasonable probability that the outcome would have been different had the jury heard the evidence.

Broadly viewing the testimony presented, the testimony could suggest that Brenda made up the entire incident in order to harm Page. But the evidence to support this allegation is very thin. The purported claim that Brenda said, "If I can't have him nobody can," is so general and vague that it cannot reasonably be interpreted as a threat to concoct a criminal case against Page based on a claim of rape. Also, in addition to the slight discrepancies that the witnesses claim that Brenda made when testifying about the incident, the witnesses corroborated most of the more important parts of the story. They corroborated that Brenda was claiming that Page raped her daughter, that Brenda was hysterical as a result of the incident, that she reported that Page was naked alone in the room with her daughter in a sexual position, that Page's sister was away on the day of the incident, and that Brenda took L. J. to the hospital that morning. Two of the witnesses added inculpatory evidence that Brenda said that Page was physically trying to prevent her from entering the bedroom by holding or blocking the door.

Moreover, the three witnesses' testimony was not internally consistent. For example, the niece testified that Brenda said that L. J. was on her back whereas Page's sister testified that L. J. was turned around backward. With regard to the claim that the victim of the similar transaction incident had recanted her story, the information was hearsay, we do not know whether the victim's mother was willing to testify at the trial, the information was not connected in time with the relevant events, and there is no indication that Page ever even attempted to overturn his conviction based on that information.

In summary, even if Page's trial counsel's failure to interview these witnesses could be deemed deficient, which we do not decide, Page has failed to show that a reasonable probability exists that the result of the trial would have been different if he had.

(d) Finally, Page contends that his counsel should have objected to introduction of a doll that was found on the bed and two photographs of the same doll. The State used the evidence to suggest that the victim had tried to communicate by putting the dolls legs and dress in a position that suggested a sexual encounter. Here again, Page did not have trial counsel testify at the ineffective assistance

hearing, and in the absence of evidence to the contrary, his actions are presumed to be strategic. *Holmes*, 273 Ga. at 648 (5) (c).

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED FEBRUARY 9, 2005.

*Stanley W. Schoolcraft III*, for appellant.

*Robert E. Keller, District Attorney, Lalaine A. Briones, Assistant District Attorney*, for appellee.