## A06A1486. MELTON v. THE STATE.
(639 SE2d 411)

ELLINGTON, Judge.

A Dooly County jury found William Melton guilty of aggravated sexual battery, OCGA § 16-6-22.2 (b), and two counts of aggravated sodomy, OCGA § 16-6-2 (a).[1] Melton appeals, asserting, in part, that his convictions must be reversed because the State failed to present sufficient evidence. Because the record shows that the State failed to prove venue was in Dooly County, we must reverse Melton's convictions.

When a defendant challenges the sufficiency of the evidence on appeal, this Court must

> view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence. An appellate court determines evidence sufficiency rather than weighing the evidence or determining witness credibility. The standard is whether, based on the evidence presented, a rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

[1] At the time of the October 2002 crime and Melton's February 2004 trial, OCGA § 16-6-2 (a) included definitions for both sodomy and aggravated sodomy. The crimes were later separated into two separate subsections when the statute was amended in 2006, effective July 1, 2006. See Ga. L. 2006, p. 379, § 9. All references to OCGA § 16-6-2 in this opinion refer to the statute as it existed before the 2006 amendment.

doubt. The review of the sufficiency of the evidence to support venue is no different because venue is an essential element that must be proven beyond a reasonable doubt in every criminal trial.

(Citations and punctuation omitted.) *Chaparro v. State*, 279 Ga. App. 145 (630 SE2d 645) (2006).

Viewed in the light most favorable to the verdict, the evidence shows the following relevant facts. The victim was a 29-year-old, mentally disabled woman with an IQ of no more than 42, the low end of the moderately mentally disabled range. At the time of the acts at issue, she lived in an Easter Seals facility in Vienna, where she was under constant supervision due to her mental disability. The victim cannot read or write anything other than her own name, cannot drive and does not have a driver's license, cannot tell time, cannot use a knife (requiring someone to cut up her food for her), and cannot cross the street by herself. Even so, she had good verbal skills and was able to tell others when she liked something and when she did not. She was able to work at various jobs doing minor tasks, such as pouring drinks, sweeping the floor, and wiping off tables. Witnesses described the victim as "very sociable," and "very loving, very huggy," explaining that she would often hug people she did not know.

Melton met the victim at church, where she saw his motorcycle and asked if she could have a ride. According to one witness, the victim often "pester[ed]" Melton about giving her a ride after church. Melton gave her a ride on his motorcycle three or four times. Approximately one year before the incident at issue, Melton approached a church member who worked as a contract nurse for the Easter Seals facility and who met with the victim at the facility twice a day, seven days a week. Melton asked the nurse "what the deal was with [the victim]." The nurse testified that she told Melton, "[D]on't take [the victim] seriously at all" because she had the mentality of a "five-year-old . . . [o]n a good day." Melton admitted that he inquired about the victim because he liked her and was "curious." Melton testified that he could not recall his conversation with the nurse "[w]ord-for-word . . . but the essence I got out of it was [the victim] had a learning disability." He also admitted that he knew that the victim lived in an Easter Seals residential facility for handicapped adults.

In October 2002, Melton agreed to do some electrical work at the home of a church member, Teresa Brown. Melton asked Brown to go get the victim and bring her to Brown's home so he could give the victim a ride on his motorcycle. According to Melton, the victim had repeatedly asked him for a motorcycle ride after church, but when he had refused, the victim had become very emotional and almost cried. Brown had permission to pick up the victim at the Easter Seals

facility and take her to church or to Brown's home in Vienna. Based upon Melton's request, Brown went to the Easter Seals facility and brought the victim to her (Brown's) home.

While Melton was at Brown's home, Brown went to church, leaving the victim alone with Melton while he made the repairs. The victim testified that, after Brown left, Melton pulled off her clothes and "licked me all over," including her "butt" and "down there" (gesturing). The victim testified that Melton then put his "private part" in her mouth and asked her to "suck it," which she did.

Melton then took the victim on a motorcycle ride to an unknown location, where he stopped beside some woods. The victim testified that while they were in the woods, Melton "stuck his finger . . . up in me," causing her to bleed. When they returned to Brown's home, Melton told the victim that their activity was a secret and that he should not have done those things with her because he was a married man.

When Brown returned home from church, Melton and the victim were sitting on a love seat on her front porch and the victim was unusually quiet. Brown took the victim back to the Easter Seals home, and the victim went directly to the bathroom. About 15 minutes later, another resident reported to the house parent that the victim was rinsing blood out of her underwear. When the house parent asked the victim about the blood, the victim claimed she was having her "cycle." The house parent knew this was untrue because the victim was given shots to prevent menstrual periods. The victim became upset and started crying, and the house parent called the facility's nurse. The nurse examined the victim "head to toe" and discovered that she was chapped between her legs and on her labia. The nurse described it as looking like a "beard burn," something a woman gets on her face when she has been kissing a man with a beard. The nurse also testified that the victim had no bruises or other evidence of any force. A midwife who examined the victim a few weeks later testified that the victim had an intact hymen, which indicated she was a virgin, and that penetration with a finger could have caused bleeding. The victim told the nurse and at least two other witnesses about what Melton had done, but they testified that the victim had told them that she wanted to do those acts with Melton.

The State indicted Melton for one count of aggravated sexual battery for the activity in the woods and two counts of aggravated sodomy for the activity in Brown's home. At trial, an expert witness, Anne Hazzard, Ph.D.,[2] testified that she had examined the victim and

---

[2] In another enumeration of error, Melton asserts that the trial court should not have allowed Dr. Hazzard to testify because she was paid by the victim's family. Because Melton

that the victim's mental functions were equivalent to a kindergarten or first-grade child. In Dr. Hazzard's opinion, the victim was not able to understand the consequences of her actions, including sexual acts, or understand when an innocent affectionate act became sexual. Dr. Hazzard testified that, in her opinion, the victim was not "competent to consent to a sexual act."

Melton testified at trial and admitted that he had touched and licked the victim's genitalia and that she had performed oral sex on him. He claimed, however, that the victim initiated the activity by flirting with him and that he eventually gave in to her advances. While he "knew there was something wrong with her," he did not think her disability "limited her ability to do things." He testified that she appeared to understand what she was doing, that she knew "exactly what she wanted to do," and that the acts were consensual.

1. (a) Melton claims that the State failed to meet its burden of proving venue for the two acts of aggravated sodomy, because the State presented no evidence that Brown's residence or the city of Vienna is located in Dooly County. We agree.

While the evidence at trial showed the acts occurred in Brown's home, the only testimony regarding the location of the home was that it was at "1009 East Union Street, Vienna." This was insufficient to prove that the proper venue for the prosecution for those offenses was Dooly County. As the Supreme Court of Georgia has held, "[b]y long-standing precedent, proving that a crime took place within a city without also proving that the city is entirely within a county does not establish venue." (Footnote omitted.) *Graham v. State*, 275 Ga. 290, 293 (2) (565 SE2d 467) (2002). Thus, the State failed to present sufficient evidence of venue for Melton's aggravated sodomy convictions, and those convictions must be reversed.

(b) Melton also argues that, absent evidence that the acts of aggravated sodomy occurred in Dooly County, there is no basis from which to apply OCGA § 17-2-2 (h) to establish venue for the act of aggravated sexual battery that took place after Melton and the victim left Brown's home on his motorcycle. OCGA § 17-2-2 (h) provides that "[i]f in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." In this case, because the State failed to prove that Brown's home was in Dooly County, there is no evidence upon which to base a finding under OCGA § 17-2-2 (h) that Melton

---

failed to support this enumeration of error with argument and citations to authority, we deem it waived and irrelevant to our sufficiency of the evidence analysis. See *Hixson v. Hickson*, 236 Ga. App. 894, 896 (4) (512 SE2d 648) (1999).

subsequently committed aggravated sexual battery in Dooly County. Therefore, Melton's aggravated sexual battery conviction must be reversed.

(c) Although the State argues that venue was established at trial for all of the crimes because Melton never contested the fact "that the [acts of aggravated sodomy] took place in a home in Dooly County," this argument lacks merit. Melton's plea of not guilty to the indictment challenged all of the accusations contained within the indictment, including venue, and placed the State on notice that it was required to present evidence establishing venue beyond a reasonable doubt.[3] *Tompkins v. State*, 278 Ga. 857, 858 (1) (607 SE2d 891) (2005); *Jones v. State*, 272 Ga. 900, 903 (3) (537 SE2d 80) (2000).

2. Although Melton's convictions are reversed based on the State's failure to prove venue, the State may retry Melton without violating the Double Jeopardy Clause if there was otherwise sufficient evidence at trial to support the defendant's convictions for the crimes charged. See *Jones v. State*, 272 Ga. at 905 (4) ("if a criminal conviction is reversed because of an evidentiary insufficiency concerning the procedural propriety of laying venue within a particular forum, and not because of an evidentiary insufficiency concerning the accused's guilt, retrial is not barred by the Double Jeopardy Clause"). Therefore, we must address Melton's remaining allegations that there was insufficient evidence to support his convictions.

"A person commits the offense of aggravated sexual battery when he intentionally penetrates with a foreign object[4] the sexual organ or anus of another person without the consent of that person." OCGA § 16-6-22.2 (b). Further, under former OCGA § 16-6-2 (a),[5] "[a] person

---

[3] We further note that a statement made by defense counsel during the hearing on Melton's motion for a directed verdict of acquittal cannot be considered a stipulation to the fact of venue for the two aggravated sodomy charges. When the trial court sought to clarify the motion before it, defense counsel replied that there was no question with regard to venue for those charges. The State bears the burden of proving every essential element, however, "and the fact that a defendant does not affirmatively challenge an element at trial does not relieve the State of this burden, nor does it justify the conclusion that the defendant stipulates to the existence of that element." (Footnote omitted.) *Tompkins v. State*, 278 Ga. 857, 858 (2) (607 SE2d 891) (2005). Further, while a defendant may stipulate to venue, "the record must reflect that the defendant expressly authorized such stipulation and that the stipulation was intended to obviate the need for direct proof." (Footnote omitted.) Id. at 858 (1). Additionally, "the trier of fact must be informed of the stipulated facts." (Citation omitted.) *Raby v. State*, 274 Ga. App. 665, 666 (1) (618 SE2d 704) (2005). In this case, the record fails to show that Melton authorized a stipulation to venue, that there was a stipulation that was intended to suspend the need for proof of venue, or that the jury was informed that there was stipulation to venue for these charges. As a result, we cannot find that there was a stipulation of fact as to venue. *Tompkins v. State*, 278 Ga. at 858 (1).

[4] "The term 'foreign object' includes not only inanimate instruments, but also a person's body parts, such as a finger." (Footnote omitted.) *Hardeman v. State*, 247 Ga. App. 503, 504 (2) (544 SE2d 481) (2001).

[5] See footnote 1, supra.

commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another. A person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person." In several enumerations, Melton contends that there was insufficient evidence that his acts with the victim were nonconsensual, that he knew or should have known that the victim was unable to consent to the acts, and that he used force during the commission of the acts of oral sex.

(a) Melton argues that there was insufficient evidence to support his convictions because the victim consented to the acts and was competent to do so. Melton relies on evidence showing that the victim has never been declared legally incompetent.

> With regard to consent, the State had the burden of proving beyond a reasonable doubt that the victim's disability rendered her incapable of knowing and intelligent consent to the alleged sexual act, and whether or not the State had discharged this burden was for the jury to decide.

(Citation and punctuation omitted.) *Page v. State*, 271 Ga. App. 541, 543 (1) (610 SE2d 171) (2005). In this case, the fact that the victim had never been declared legally incompetent did not mandate a conclusion by the jury that the victim was, therefore, competent to consent to sexual activity. As shown above, the State submitted substantial other evidence that the victim was not capable of consenting to sexual activity because of her mental disability, and this evidence was sufficient to authorize the jury's finding on the issue of lack of consent. See id. (finding sufficient evidence that a thirty-one-year-old mentally disabled woman who functioned at the level of a two-year-old was incapable of consenting to sexual intercourse); *Baise v. State*, 232 Ga. App. 556, 558 (1) (502 SE2d 492) (1998) (finding sufficient evidence that a seventeen-year-old victim with an IQ of 41 and the adaptive skills of a five- or six-year-old child was incapable of consenting to sexual intercourse).

(b) Melton argues the State presented insufficient evidence to establish his criminal intent with regard to the charges against him, claiming that he did not know the victim was not capable of consenting to his acts. "The intent with which an act is done is peculiarly a question of fact for determination by the jury. . . . Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this." (Citation and footnote omitted.) *Howard v. State*, 268 Ga. App. 558, 559-560 (602 SE2d 295) (2004).

The evidence shows that Melton knew that the victim resided in an Easter Seals facility for handicapped adults, knew that she had a mental disability, had been told that she had the mind of a five-year-

old child, and had witnessed her become unusually emotional when he declined her requests for a motorcycle ride. There was sufficient evidence from which the jury could have concluded that Melton knew or should have known the victim was incapable of giving consent and that he either acted with the requisite criminal intent or was criminally negligent in assuming that she was able to consent. *Baise v. State*, 232 Ga. App. at 559 (1) ("mistake of fact does not constitute a defense to a criminal charge if it is superinduced by the fault or negligence of the party doing the wrongful act") (citation omitted).

(c) Melton argues that the State presented insufficient evidence to prove he used force against the victim to commit the two acts of aggravated sodomy. In its responsive brief, the State failed to address this argument or point to any evidence of force in the trial transcript. For the following reasons, we agree with Melton that the State failed to prove force in this case and, as a result, there was insufficient evidence to sustain the aggravated sodomy convictions.

At trial, the victim specifically denied that Melton hit, yelled, pinched, or did "anything like that" to her prior to or during the acts of sodomy.[6] In addition, an investigator for the Georgia Bureau of Investigation testified that, when he interviewed the victim during his investigation, the victim told him that she had wanted to take part in the acts with Melton because he was her "friend," and she never indicated that he had forced her to do so. Further, we have reviewed the record and find that there is no evidence that Melton used any actual force, such as physical violence, threats, or mental coercion, against the victim prior to or during the acts of sodomy at Brown's home. See *Howard v. State*, 281 Ga. App. 797, 800 (3) (637 SE2d 448) (2006) ("[t]he term 'forcibly' means acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation") (citation and punctuation omitted). Accordingly, the State failed to present sufficient evidence of actual force to sustain the aggravated sodomy convictions.

This does not end our analysis, however. As shown in Division 2 (a), supra, the State presented sufficient evidence that the victim was unable to consent to sexual activity due to her mental disability. Evidence of a victim's inability to give consent can be used to impute the element of force in certain sexual abuse cases involving a victim who is intoxicated, drugged, or mentally incompetent. See, e.g., *Baise v. State*, 232 Ga. App. at 558 (1). In *Baise*, a case involving a mentally incompetent rape victim, this Court held that,

---

[6] Although the victim testified that, at some point while she was alone with Melton in Brown's house, she started crying and Melton pulled her hair, there was no evidence as to whether this occurred before, during, or after the acts of sodomy.

in a forcible rape case where the victim indicates consent and does not resist, but by reason of mental retardation she is incapable of intelligently consenting, the lack of actual force necessary to overcome a resistant victim in other cases is supplied constructively by the rule that no more force need be used than that necessary to effect the penetration made by the defendant.

(Citations omitted.) Id.; see also *Demetrios v. State*, 246 Ga. App. 506, 507 (1) (a) (541 SE2d 83) (2000) (applying this rule in a case involving the rape of a woman who was under the influence of drugs and hypnosis). Thus, the question presented in the instant case is whether the force necessary to sustain an aggravated sodomy conviction may be supplied constructively, as in *Baise*, when there is a mentally incompetent or intoxicated victim but no evidence of actual force. As explained below, we answer in the negative.

Under OCGA § 16-6-1 (a) (1), the crime of rape has three separate, essential elements: penetration of the female's sex organ by the defendant's penis, without the consent of the victim, and with the use of force. Under the *Baise* analysis, the same evidence of penile penetration could be used to prove both of the elements of penetration and force when the victim was unable to consent due to mental incompetence or severe intoxication. The Court's ruling in *Baise* implicitly recognized that there was no other statute which criminalized nonconsensual sexual intercourse with a victim who was above the age of consent, but incapable of consenting, when there was no evidence of actual force.[7] In other words, without a rule allowing a finding of constructive force based upon penile penetration, a defendant who had sexual intercourse with a victim who was mentally incompetent or severely intoxicated could avoid a criminal conviction as long as he did not use actual force to accomplish the intercourse.

In contrast, the essential elements of aggravated sodomy are an act of illegal sodomy that is accompanied by force. OCGA § 16-6-2 (a) (the statute also applies to any act of unforced sodomy involving a child of less than ten years of age). A sodomy conviction requires evidence of a nonconsensual, public, or commercial act involving contact between one party's sexual organs and the other's mouth or

---

[7] See *Baise v. State*, 232 Ga. App. at 558-559 (1), citing *Drake v. State*, 239 Ga. 232 (236 SE2d 748) (1977). In *Drake*, the Supreme Court of Georgia noted that, if the element of force in a rape case was established solely by evidence that the victim was underage, then no one would ever be convicted of statutory rape. 239 Ga. at 234 (1); see OCGA § 16-6-3 (a) (the statutory rape statute, which is a strict liability statute criminalizing unforced sexual intercourse with an underage victim).

anus. OCGA § 16-6-2 (a); see *Powell v. State*, 270 Ga. 327, 336 (3) (510 SE2d 18) (1998) (ruling that "private, unforced, non-commercial acts of sexual intimacy between persons legally able to consent" are constitutionally protected, but other acts of sodomy are not). Although it is not necessary to present any evidence of penile penetration in order to sustain a sodomy conviction, *Green v. State*, 249 Ga. App. 546, 549 (1) (b) (547 SE2d 569) (2001), the statute itself does not distinguish between acts of sodomy involving penetration and those that do not. Cf. OCGA § 16-6-1 (a) (1) (the rape statute requires penile penetration). Further, by definition, sodomy is a lesser included offense of aggravated sodomy, and the only distinction between the two crimes is the element of force. OCGA § 16-1-6 (1) (lesser included offense); *Stover v. State*, 256 Ga. 515, 517 (2) (350 SE2d 577) (1986).

It follows that a defendant who has unforced oral-genital or anal-genital contact with a victim who is above the age of consent, but unable to do so due to incapacity, could be found guilty of sodomy, regardless whether there is any penile penetration. If there is evidence of actual force, however, then the defendant could be convicted for aggravated sodomy. In contrast, a defendant who has sexual intercourse with a similar victim can only be convicted of rape if there was actual penile penetration. OCGA § 16-6-1 (a) (1). Therefore, without penetration, there can be no rape conviction — even if the defendant used actual, even substantial, force in his attempt to rape the victim. Consequently, the fact that aggravated sodomy has, as a matter of law, a lesser included offense (sodomy) is a critical distinction between rape and aggravated sodomy that precludes the State from using evidence of constructive force to prove aggravated sodomy.

In *Brewer v. State*, 271 Ga. 605, 606 (523 SE2d 18) (1999), the Supreme Court of Georgia ruled that the State must prove actual force when prosecuting a defendant for the aggravated sodomy of a victim under the age of consent. In explaining its ruling, the Court acknowledged that the legislature had enacted a separate statute, aggravated child molestation, OCGA § 16-6-4 (c), which criminalized sodomy with an underage victim when there was no evidence of force and which carried a less harsh punishment than aggravated sodomy. Id. at 606-607. According to the Court, "[b]y enacting the aggravated child molestation statute, the General Assembly negated the applicability of a presumption of force in aggravated sodomy cases involving children, since such a presumption would leave the separate crime of aggravated child molestation with no practical purpose." Id. at 607.

Applying a similar analysis to this case, we conclude that allowing a presumption of force in aggravated sodomy cases based solely upon the victim's mental incapacity to consent would undermine the existing sodomy statute, leaving it with very little practical purpose.

*Brewer v. State*, 271 Ga. at 607; see also *Powell v. State*, 270 Ga. at 336 (3) (significantly limiting the reach of the sodomy statute). More importantly, if we recognized constructive force in aggravated sodomy cases involving victims who are above the age of consent, but incapable of consenting due to voluntary intoxication or mental incapacity, we would be providing greater protections for those victims than the protections given to victims of rape and aggravated sodomy who are between the ages of ten and sixteen.[8] See *Howard v. State*, 281 Ga. App. at 805 (3) (the State must prove actual force in rape cases involving children between the ages of ten and sixteen); *Brewer v. State*, 271 Ga. at 606 (aggravated sodomy). This is an illogical and unreasonable result.

Therefore, because the sodomy statute already criminalizes nonconsensual but unforced sodomy, while carrying a less harsh punishment than aggravated sodomy,[9] we conclude that there is no reasonable basis for allowing a showing of constructive (instead of actual) force to prove aggravated sodomy in cases involving victims who are above the age of consent but unable to consent due to mental incompetency or intoxication by drugs or alcohol. Consequently, because the State in this case failed to prove that Melton used actual force during the two acts of sodomy at Brown's home, the evidence was insufficient to sustain the two aggravated sodomy convictions.[10] As a result, the State may not retry Melton on those charges. See *In the Interest of C. C.*, 280 Ga. App. 590, n. 1 (634 SE2d 532) (2006) (retrial was barred under the Double Jeopardy Clause because the State failed to prove venue and the elements of the crimes charged).

(d) The State may retry Melton on the aggravated sexual battery charge without violating the Double Jeopardy Clause, because there was sufficient evidence at trial to support that conviction. See *Jones v. State*, 272 Ga. at 905 (4) (permitting retrial when a conviction is reversed due to insufficient evidence of venue as long as there was sufficient evidence presented at trial to prove the defendant's guilt).

3. Melton's remaining enumerations of error are rendered moot by our rulings in Divisions 1 and 2, supra.

*Judgment reversed. Johnson, P. J., and Miller, J., concur.*

---

[8] The current aggravated sodomy statute does not require evidence of force if the victim is under the age of ten. OCGA § 16-6-2 (a) (2).

[9] At the time of Melton's conviction, a conviction for sodomy between adults carried a sentence of one to twenty years, while a conviction for aggravated sodomy carried a sentence of life or of ten to thirty years. OCGA § 16-6-2 (b).

[10] Although the evidence was sufficient to convict Melton of sodomy or, in the alternative, sexual battery, OCGA § 16-6-22.1 (b), Melton was not charged with either of those crimes, nor did he request jury charges on those crimes as lesser included offenses.

DECIDED DECEMBER 1, 2006.

David E. Morgan III, for appellant.

Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney, for appellee.