**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, P. J., and DOYLE , J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 27, 2017**

# In the Court of Appeals of Georgia

A17A1301. RODRIGUEZ v. THE STATE.                    DO-044 C

DOYLE, Judge.

Following a jury trial, Onofre Rodriguez, Jr., appeals from his conviction for committing reckless conduct by an HIV-infected person.[1] He contends that the evidence was insufficient to prove that he was an HIV-infected person, as that term is defined by the applicable Code section, OCGA § 31-22-9.1. Because the State failed to adduce sufficient evidence to prove this element, we reverse.

Construed in favor of the verdict,[2] the evidence shows that 43-year-old S. F. became acquainted with 29-year-old Rodriguez when he came to her house to visit her grandson. After a few more encounters, S. F. invited Rodriguez to go dancing

---

[1] OCGA § 16-5-60 (c) (1).

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

with her on a Saturday night, and he agreed. After an evening of dancing, S. F. and Rodriguez went back to S. F.'s apartment where they engaged in consensual sexual intercourse. S. F. insisted that Rodriguez use a condom, but during intercourse she noticed that he was no longer wearing the condom. S. F. ended the intercourse and demanded to know why Rodriguez had removed the condom. Rodriguez responded that he was sorry and reluctantly told her, "I am HIV positive. I just carry the virus."

S. F. immediately sought medical advice and the following day, Sunday, reported the incident to the police. On Monday, S. F. went to the health department with Rodriguez to get herself tested and to confirm that Rodriguez was HIV positive. After individual counseling at the health department, S. F. privately spoke with Rodriguez and asked him to prove his status to her. He resisted, and she waited in the parking lot; eventually, Rodriguez met S. F. in the parking lot and handed her a single-page document from Quest Diagnostics purporting to show that he had tested positive for the presence of HIV infection. Later testing of S. F. revealed that she did not contract HIV.

Based on S. F.'s report, police contacted Rodriguez, who agreed to speak to them at the police department. During the interview, Rodriguez admitted that he was "HIV positive" and that he had had sex with S. F. without telling her of his status

beforehand. Based on the interview, police obtained a warrant for Rodriguez's arrest, and he was charged with one count of reckless conduct by engaging in sexual intercourse without first disclosing that he is an HIV-infected person. Following a jury trial, he was found guilty and sentenced to ten years imprisonent. Rodriguez now appeals from the denial of his motion for new trial.

Rodriguez contends that the evidence was insufficient to support the guilty verdict because the State failed to prove an essential element of the crime, i.e., that Rodriguez is an "HIV infected person" as that term is defined by statute. Based on the record in this case, and the controlling statutory authority, we agree.

When an appellate court reviews the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3]

We begin with the axiom that "[t]he State bears the burden of proving every essential element [of an offense]. . . and the fact that a defendant does not affirmatively challenge an element at trial does not relieve the State of this burden,

---

[3] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

nor does it justify the conclusion that the defendant stipulates to the existence of that element."[4]

The essential elements of a crime are prescribed by the applicable statutory provisions.[5] When reading these provisions,

[w]e must also bear in mind . . . that where the statutory language is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms. In addition, a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto.[6]

---

[4] (Punctuation omitted.) *Melton v. State*, 282 Ga. App. 685, 689 (1) (c) n.3 (639 SE2d 411) (2006).

[5] See *Krist v. State*, 227 Ga. 85, 89 (1) (179 SE2d 56) (1970) ("For any particular act or conduct to constitute a criminal offense[,] the statute defining the offense, or some other law of the State must in express terms declare such conduct to be a violation of the law or provide that it be punished as a criminal offense.") (punctuation and emphasis omitted.).

[6] (Footnotes and punctuation omitted.) *Weaver v. State*, 299 Ga. App. 718, 721-722 (2) (683 SE2d 361) (2009).

In sum, "[t]hough we may review the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends."[7]

Here, the elements of the crime are set forth in OCGA § 16-5-60 (c) ("HIV Reckless Conduct Statute"):

> A person who is an HIV infected person who, after obtaining knowledge of being infected with HIV . . . [k]nowingly engages in sexual intercourse . . . and . . . does not disclose to the other person the fact of that infected person's being an HIV infected person prior to that intercourse or sexual act . . . is guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not more than ten years.

Importantly, subsection (a) of the same Code section provides that "[a]ny term used in this Code section and defined in Code Section 31-22-9.1 shall have the meaning provided for such term in Code Section 31-22-9.1."[8] Thus, the statute requires that

---

[7] (Punctuation and citation omitted.) *Patton v. Vanterpool*, __ Ga. __ (Case No. S17A0767; decided Oct. 16, 2017), citing *Scott v. State*, 299 Ga. 568, 571 (788 SE2d 468) (2016).

[8] OCGA § 16-5-60 (a).

certain terms in the HIV Reckless Conduct Statute must be given the meanings provided in OCGA § 31-22-9.1.

OCGA § 31-22-9.1 defines a number of terms and phrases that appear in the HIV Reckless Conduct Statute. First, the term "HIV infected person" is defined as someone "who has been determined to be infected with HIV. . . ."[9] The latter phrase "means having a confirmed positive HIV test."[10] And the phrase "confirmed positive HIV test" "means the results of at least two separate types of HIV tests, both of which indicate the presence of HIV in the substance tested thereby."[11] Finally, "HIV test" is defined as "any antibody, antigen, viral particle, viral culture, or other test to indicate the presence of HIV in the human body, *which test has been approved for such purposes by the regulations of the department*."[12] As used in that chapter of the Code, "the department" refers to the Department of Community Health ("DCH").[13]

---

[9] OCGA § 31-22-9.1 (a) (11).

[10] Id. at (a) (7).

[11] Id. at (a) (5).

[12] (Emphasis supplied.) Id. at (a) (12).

[13] OCGA § 31-22-1 (2.2).

Rodriguez argues that his conviction must be reversed because the DCH has not promulgated any regulations approving of testing "to indicate the presence of HIV in the human body,"[14] so there was no evidence that he was an "HIV infected person"[15] as defined in the statute. In response, the State identifies no regulations but simply argues that it was not required to prove the "mysterious new fifth element." But as set forth in OCGA §§ 16-5-60 (a) and 31-22-9.1 (12), this element is explicitly included in the method for proving that a person is an "HIV infected person" for purposes of the HIV Reckless Conduct Statute. Thus, when these Code sections are read together, they require the State to prove, among the other elements, that Rodriguez was determined to be infected with HIV by an HIV test "approved for such purposes by the regulations of the [DCH]."[16] Absent such proof, Rodriguez could not be found guilty because "[u]nder the uniform rule of strict construction, a penal statute can not be expanded by implication" to include conduct or persons not explicitly identified in the statute.[17]

---

[14] Id.

[15] Id. at (a) (11).

[16] OCGA § 31-22-9.1 (a) (12).

[17] *Wood v. State*, 219 Ga. 509, 513 (134 SE2d 8) (1963).

Other than general clinical laboratory licensing requirements,[18] we have found no DCH regulations specifically purporting to approve testing for purposes of indicating the presence of HIV. Pretermitting whether the DCH's general licensing requirements satisfy the HIV Reckless Conduct Statute, there was no evidence of any license held by any lab in this case, nor was there any evidence regarding whether the lab or testing in this case satisfies the DCH's general licensing requirements.

The only evidence of Rodriguez's HIV status was (a) his admission to S. F. and to police that he was "HIV positive," and (b) a one-page Quest Diagnostics testing report that Rodriguez handed to S. F. as they spoke in the parking lot outside of the local health department office. With respect to Rodriguez's admission, it could not satisfy the State's burden to prove his HIV status as defined under OCGA § 31-22-9.1 because it did not address the statutory element discussed above, i.e. the type of testing or the approval by DCH.[19]

---

[18] See Ga. Comp. R. & Regs. r. 111-8-10-.01 et seq.

[19] In the absence of the definitions in OCGA § 31-22-9.1, it would be reasonable to conclude that a physician's diagnosis or even a layman's common-sense understanding of his status might suffice to prove a person's HIV status. But the HIV Reckless Conduct Statute explicitly requires that its language be defined according to the meanings given in OCGA § 31-22-9.1, and we are without authority to ignore those meanings or change them. See *Weaver*, 299 Ga. App. at 721-722 (2).

Likewise, the Quest Diagnostics document does not purport to satisfy the regulations of the DCH, nor did any witness testify as to the nature of the Quest Diagnostics report or its compliance with DCH regulations or licensing requirements.[20] It was simply a document that Rodriguez handed to S. F. in a parking lot, authenticated at trial by S. F. as such a document but nothing more. The report itself, as it appears in the record, presents raw blood data and medical jargon.[21] The State did not call any physician or other competent witness to explain the test report; testify as to its origin, methodology, or meaning; or describe how it satisfies the statutory criteria for demonstrating that a person is an "HIV infected person" under the definitions in OCGA § 31-22-9.1.[22]

---

[20] It may well be, as a factual matter, that Quest Diagnostics is a fully licensed clinical laboratory authorized to perform HIV testing. But our review, as was the jury's, is properly confined to the proof admitted at trial. See *Melton*, 282 Ga. App. at 689 (1) (c) n.3 (noting the State's burden of proof).

[21] The substantive portion of the test includes the following notations: "EIV 1/2 EIA AB screen w/ reflex to HIV 1 WB[,] HIV 1/2 EIA AB screen repeatedly reactive[,] HIV-1 AB confirmation by western blot interpretation . . . In conjunction with a repeatedly reactive HIV 1/2 screening test, a positive HIV-1 western blot result confirms the presence of HIV-1 infection in patients greater than 24 months of age."

[22] We note that Rodriguez also makes a Confrontation Clause argument that we need not address. See generally *Bullcoming v. New Mexico*, 564 U. S. 647, 652 (131 SCt 2705, 180 LE2d 610) (2011) (holding that the Confrontation Clause prevents admission of "a forensic laboratory report containing a testimonial certification –

9

Notably, the trial court instructed the jury that an "HIV test" is one that "has been approved for [indicating the presence of HIV] by the regulations of the [DCH]." But based on the record before us, there was no evidence addressing this element, so there was no evidence to support a finding that Rodriguez was an "HIV infected person"[23] with a "confirmed positive HIV test,"[24] as those terms are defined by the

made for the purpose of proving a particular fact – through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification").

[23] OCGA § 31-22-9.1 (a) (11).

[24] Id. at (a) (5).

statute.[25] Based on this record, we conclude that the State failed to meet its burden to prove Rodriguez's status under OCGA § 16-5-60.

Rodriguez's remaining enumerations are moot.

*Judgment reversed. Barnes, P. J., and Miller, P. J., concur*.

---

[25] Compare *Davis v. State*, __ Ga. App. __ (Case No. A17A1008; decided September 27, 2017) (not addressing the sufficiency of the evidence of the defendant's HIV status but reciting testimony from a treating physician who diagnosed the defendant with "full blown AIDS"); *Ginn v. State*, 293 Ga. App. 757, 758 (667 SE2d 712) (2008) (affirming a conviction where the defendant did not challenge the proof of her HIV status); *Burk v. State*, 223 Ga. App. 530, 530-531 (1) (478 SE2d 416) (1996) (affirming a conviction where the defendant's treating physician testified that the defendant had developed AIDS, which is another method of proving HIV status under OCGA § 31-22-9.1 (7)); *Davis v. State,* 196 Ga. App. 390, 391 (1) (396 SE2d 301) (1990) (affirming conviction on general grounds but not providing a detailed recitation of the evidence nor specifically addressing the elements of the crime). Our decision is based on the record and briefing before us and in the trial court. This Court's cases affirming other convictions do not conflict with the holding herein because the argument Rodriguez makes was not ruled upon in those cases. "Issues merely lurking in the record, neither brought to the court's attention nor expressly ruled upon, have not been decided so as to constitute precedent." *Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 713 (502 SE2d 514) (1998).