**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 14, 2020**

# In the Court of Appeals of Georgia

A19A2178. DAVIS v. THE STATE.

MARKLE, Judge.

Following a jury trial, David Lee Davis was convicted of rape (OCGA § 16-6-1). Davis appeals his conviction and the denial of his motion for new trial, as amended, contending that the evidence was insufficient to support the conviction, and that the trial court erred by admitting into evidence the victim's forensic interview under the residual hearsay exception. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that the victim was a 23-year-old woman who was diagnosed with moderate mental retardation, microcephalus, and paranoid schizophrenia, among other medical and mental conditions, which caused her to function at the capacity of a young child. On an

evening in December 2015, she left home without her mother's permission and walked to a center for people with disabilities that she regularly attended. Despite being underdressed for a cold evening, the victim stayed out all night near the center. Early the next morning, Davis approached her outside a grocery store in the same strip mall. Davis then lured her behind the store and had sexual intercourse with her.

Following the incident, staff from the center recognized the victim, and notified her mother. When they were reunited, the victim told her mother what Davis had done, and she was taken first to her physician and then to the hospital for a sexual assault examination. The police recovered two condoms, and DNA testing on them revealed positive matches to both Davis and the victim. The police also obtained video surveillance from store fronts at the strip mall, allowing them to identify Davis. The victim submitted to a forensic interview five days after the incident. Davis was arrested and charged with one count of rape.

Both the victim and Davis testified at trial. Although the victim had difficulty answering questions, she ultimately testified that Davis put his "man part" inside her "lady part," and that she did not want this to happen. The recording of the victim's

forensic interview was admitted and played for the jury.[1] In his testimony, Davis admitted to going behind the store and attempting to have sex with the victim, but he denied that he penetrated her or forced her in any way. He insisted that she expressly agreed to have sex with him, although she refused to perform oral sex when he asked.

The victim's physician, who treated her for over ten years, testified that she functioned at a seven- or eight-year-old level, is easily swayed, does not have the mental capacity to comprehend the nature of sexual acts or to intelligently consent to them, and that her disabilities are readily apparent to others. The victim's mother testified that the victim is incapable of functioning as an average adult. The lead investigator testified that, based on his observation of the victim's mental abilities, he arranged for her forensic interview at a child advocacy center.

The jury found Davis guilty of rape. He filed a motion for new trial contending that the evidence was insufficient to support his conviction for rape because the State failed to prove the victim lacked the capacity to consent to sexual intercourse, and the

---

[1] During the interview, the victim reported that Davis raped her near the grocery store, and she defined "rape" as her vagina and his part; that he put his part inside her; and that she had told him "no."

Davis objected to the admission of the video on hearsay grounds and as improper bolstering. The trial court admitted it under the residual hearsay exception set forth in OCGA § 24-8-807.

3

trial court erred by admitting into evidence the forensic interview of the victim under OCGA § 24-8-807. Following a hearing, the trial court denied the motion. This appeal followed.

1. Davis first argues that the evidence was insufficient to support his rape conviction because the State failed to prove the necessary element of lack of consent. We are not persuaded.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent. Thus, in evaluating the sufficiency of the evidence, we do not assess witness credibility or weigh the evidence, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt. And the verdict will be upheld so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.

(Citations and punctuation omitted.) *Johnson v. State*, 351 Ga. App. 690, 692 (832 SE2d 676) (2019).

Pursuant to OCGA § 16-6-1 (a) (1), "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will[.]" With regard to the lack of consent element, "the State had the burden of proving beyond a reasonable doubt that the victim's disability rendered her incapable of knowing and intelligent consent to the alleged sexual act, and whether or not the State had

4

discharged this burden was for the jury to decide." *Page v. State*, 271 Ga. App. 541, 543 (1) (610 SE2d 171) (2005); see also *Johnson*, 351 Ga. App. at 692 ("As we have previously explained, whether a victim consents to sex is a matter solely within the province of the jury.") (citations and punctuation omitted).

Davis contends that the evidence showed the victim had the capacity to make basic decisions, and therefore the State failed to meet its burden as to lack of consent. Specifically, Davis points to testimony that the victim had a boyfriend at the center; read books and completed math problems; assisted with the care of a young niece; chose to run away from home on the night in question; opted not to have oral sex with him; and signed the consent form for, and endured, the sexual assault examination without her mother's presence in the exam room.[2]

Essentially, Davis asks us to reweigh the evidence, which we may not do. See *Johnson*, 351 Ga. App. at 692. The jury was entitled to evaluate this evidence against the testimony of the victim's mother and physician that tended toward a finding of the

---

[2] Davis contends that the hospital's failure to require the victim's mother, as the victim's legal guardian, to sign the consent form for the exam, pursuant to OCGA § 31-9-2 (a) (7), is further evidence of the victim's capacity to consent to sexual acts. Pretermitting the applicability of OCGA § 31-9-2 in this context, at best, the admitting nurse's decision not to seek the mother's consent was a fact for the jury to consider in conjunction with other evidence.

victim's incapacity to knowingly and intelligently consent to sex. And, the jury was able to observe the victim's mental capacity as she responded to questions from the witness stand. See *Page*, 271 Ga. App. at 543 (1) (evidence of victim's severe mental retardation, "together with the jury's first-hand observation" of her, was sufficient to support its conclusion that she was incapable of consenting to sexual intercourse). Moreover, during her forensic interview, which was video recorded and published to the jury, the victim stated that she told Davis "no" during the assault. Although the jury heard Davis's account of the incident, it was under no obligation to believe that the victim consented to his acts. See *Battle v. State*, 305 Ga. 268, 271 (1) (b) (824 SE2d 335) (2019) (jury may reject a defendant's self-serving testimony). To the contrary, because there was other evidence of Davis's guilt, the jury was entitled to reject his testimony as false and treat it as substantive evidence of his own guilt. See *Daughtie v. State*, 297 Ga. 261, 263-264 (2) (773 SE2d 263) (2015). Accordingly, we find that the evidence was sufficient to support the jury's determination that the victim did not consent to sexual intercourse with Davis.

2. Davis next argues that the trial court erred by admitting into evidence the victim's forensic interview under the residual hearsay exception, OCGA § 24-8-807

6

("Rule 807"), because the interview was not more probative than other evidence at trial. We disagree.

We do not disturb a trial court's decision to admit evidence under Rule 807 absent a clear abuse of discretion. *State v. Holmes*, 304 Ga. 524, 529 (2) (820 SE2d 26) (2018).

Rule 807 provides, in pertinent part:

A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that: (1) The statement is offered as evidence of a material fact; (2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.

This rule "was designed to be used very rarely, and only in exceptional circumstances. The rule applies only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." (Citations and punctuation omitted.) *Smart v. State*, 299 Ga. 414, 421 (3) (788 SE2d 442) (2016).

Here, at a hearing outside the presence of the jurors, and in its order on the amended motion for new trial, the trial court stressed the third prong of Rule 807,

7

finding that, due to the victim's mental condition, the interests of justice were best served by admitting the contemporaneous interview into evidence. In its order, the trial court also addressed all of the factors set forth in Rule 807, including whether the interview possessed the requisite guarantees of trustworthiness.

Davis contends that the trial court erred under the second prong of Rule 807, arguing that the interview was not more probative than any other evidence because the victim testified at trial. However, Davis concedes that the unavailability of the declarant is not a prerequisite to admissibility under Rule 807. See *Sneiderman v. State*, 336 Ga. App. 153, 165 (7) (784 SE2d 18) (2016), disapproved of on other grounds by *Quiller v. State*, 338 Ga. App. 206 (789 SE2d 391) (2016). And, here, the trial court expressly found that the victim was unavailable "for all practical purposes" because she was unable to offer meaningful testimony about the rape.

Our review of the record reveals that the trial court did not abuse its discretion. At trial, the victim responded readily to the State's general questions, but once the inquiry reached the events of the rape, the victim had an episode requiring a break in the proceedings. When the examination continued, the victim was largely unresponsive, requiring the prosecutor to ask only leading questions. In light of these circumstances, the forensic interview was necessary to fill in the gaps in the victim's

testimony, and was thus more probative than her testimony alone. As such, we cannot say that the trial court abused its discretion in finding the victim's forensic interview satisfied the second prong of Rule 807.[3] See *Smart*, 299 Ga. at 421 (3); see also *United States v. Dorian*, 803 F2d 1439, 1445 (II) (A) (2) (8th Cir. 1986) (admission of hearsay testimony proper under the precursor to Rule 807 where child victim "was simply unable to testify meaningfully at trial."); *United States v. Geraci*, 74 F. App'x 241, 244 (4th Cir. 2003) (admission of testimony under Rule 807 is proper "when victim-declarant was simply unable to testify meaningfully.") (citation and punctuation omitted).[4]

For all these reasons, the trial court properly denied the amended motion for new trial, and we affirm Davis's conviction.

*Judgment affirmed. Doyle, P. J., and Coomer, J., concur*.

---

[3] In the alternative, the trial court also admitted the interview as a prior consistent statement under OCGA § 24-6-613 (c). To the extent Davis contends the trial court erred in so doing, because we find that the interview was properly admitted pursuant to Rule 807, we do not reach this claim of error.

[4] We look to federal case law when, as here, the rule in the new Evidence Code largely mirrors a Federal Rule of Evidence. *State v. Almanza*, 304 Ga. 553, 556 (2) (820 SE2d 1) (2018).